UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JASON KLINTWORTH, and )
ALK ENTERPRISES, LLC, )
                                   )
        **Plaintiffs,** )
                                   )
v.                             )    Case No. 20-CV-0178-CVE-FHM
                                   )
VALLEY FORGE INSURANCE COMPANY, )
CONTINENTAL CASUALTY COMPANY, )
and )
CNA FINANCIAL CORPORATION D/B/A )
CNA COMMERCIAL INSURANCE, )
                                   )
        **Defendants.** )

## OPINION AND ORDER

Before the Court is defendant CNA Financial Corporation's (CNAF's) motion to dismiss for lack of personal jurisdiction (Dkt. # 42). CNAF argues that it should be dismissed from this lawsuit under Federal Rule of Civil Procedure 12(b)(2), because the Court allegedly does not have personal jurisdiction over it. Plaintiffs argue that CNAF does business as "CNA," which is allegedly the parent company of plaintiffs' insurers and/or the insurer itself; thus, the Court allegedly has personal jurisdiction over CNAF. Plaintiffs have filed a response (Dkt. # 56), and CNAF has filed a reply (Dkt. # 64).

**I.**

Plaintiffs, an Oklahoma citizen and an Oklahoma limited liability company organized under the laws of Oklahoma, filed this lawsuit against defendants, three corporations incorporated and having principal places of business in states other than Oklahoma, but which plaintiffs claim do

business in Oklahoma. See Third Amended Petition, Dkt. ## 12-17; 2, at 13-14.[1] On March 9, 2016, Jason Klintworth allegedly suffered injuries when he was rear-ended by Linda Cervantes and Demarco Metoyer. Dkt. # 12-17, at 2. Prior to the accident, plaintiff purchased an uninsured motorist (UM) benefits policy from Valley Forge Insurance Company (Valley Forge), Certificate/Policy No. BUA 601424986. Id. Cervantes and Metoyer were uninsured at the time of the accident. Id. ALK Enterprises, LLC (ALK) purchased a commercial umbrella policy with an endorsement for key man coverage from Continental Casualty Company (CCC), Certificate/Policy No. CUP 6014249909, which was in effect at the time of the accident. Id. at 3. Plaintiffs identify a third, unnamed policy that they allegedly purchased from "CNA." Id. at 4. Plaintiffs claim breach of the duty of good faith and fair dealing against all three defendants.

Attached to its motion to dismiss, CNAF provided a declaration of David B. Lehman, the assistant secretary of CNAF. Dkt. # 42-1. In it, Lehman states that "CNAF is a publically traded holding company, organized under the laws of the State of Delaware, and it maintains its principal place of business in Chicago, Illinois. CNAF was created for, among other reasons, the purpose of holding common stock of a number of operating subsidiaries for the benefit of CNAF's shareholders." Id. at 2. Lehman states that CNAF is the parent company of The Continental Corporation, which is in turn the parent company of CCC. Id. Lehman states that "'CNA' is not a company. 'CNA' is a service mark registered with the United States Patent and Trademark Office by CNAF. Certain of CNAF's direct and indirect subsidiaries, including [CCC], are permitted to

---

[1] Plaintiff Klintworth originally filed this case in the Tulsa County District Court. He amended his petition three times, adding plaintiff ALK Enterprises, LLC, dropping Linda Cervantes and Demarco Metoyer as defendants, and adding the three new defendants in the third amended petition (Dkt. # 12-17).

use this service mark and do so in their insurance underwriting and claims activities." Id. at 3. Lehman states that CNAF does not do business in Oklahoma, does not own property in Oklahoma, and does not have any offices or employees in Oklahoma. Id. Lehman further states that CNAF is not now and never has been a licensed insurer, and has never held a certificate of authority from the Commissioner of the Department of Insurance of the State of Oklahoma. Id. He states that CNAF does not develop, underwrite, market, or issue, and never has developed, underwritten, marketed, or issued, insurance policies anywhere, including in Oklahoma. Id. He states that CNAF does not hire and never has hired any underwriters or other employees responsible for setting premiums for any insurance policies issued by any of its subsidiaries, including CCC. Id. He states that CNAF has never adjusted, settled, or paid any insurance claims anywhere, including in Oklahoma. Id. He states that no person or entity, including any direct or indirect subsidiary of CNAF, has ever had the express or implied authority to act as CNAF's agent in the issuance of insurance policies or handling claims for insurance benefits. Id. at 4. He states that CNAF does not do business as "CNA Commercial Insurance" in Oklahoma or elsewhere. Id. He further states that CNAF did not develop, underwrite, or issue an insurance policy to either plaintiff. Id. He states that CNAF has no employees, and its board of directors conducts separate meetings from those of its subsidiaries. Id. CNAF also maintains its own minutes of its board meetings, by-laws, articles of incorporation, and corporate records, while its subsidiaries have their own minutes, by-laws, articles of incorporation, and corporate records. Id. CNAF maintains its own books and accounting records and its own separate banking financial accounts. Id. at 5. CNAF and its direct and indirect subsidiaries, including CCC, have always been separate and distinct corporate entities. Id.

3

Plaintiffs attached to their response multiple documents showing that Valley Forge and CCC use the logo "CNA." For instance, the policies that plaintiffs purchased from CCC and Valley Forge contain the logo "CNA." Dkt. # 59-1. "CNA" corresponded with ALK as "Dear CNA Policyholder." Dkt. # 56-2. ALK and/or Klintworth paid premiums by checks payable to "CNA Insurance." Dkt. # 59-1. ALK received a letter from "CNA" stating that the address of "CNA Insurance" had changed. Id. CNA allegedly controls the claims handling process. Dkt. # 56-4, at 5. The adjustor for the policies identified himself as an employee of CNA. Id. at 4. The supervisor of the adjustor identified himself as an employee of CNA. Dkt. # 56-5, at 3. CNA's employee sent plaintiff a letter advising of CNA's goals during the claims handling process. Dkt. # 56-6. CNA's employee hired two Oklahoma attorneys to review different aspects of the matter, one from the perspective of potential liability of Klintworth and one from its own perspective; both attorneys directed correspondence to "CNA." See Dkt. # 59-2. CNA personnel in Oklahoma City, Oklahoma, provided copies of coverage to the adjustor who then provided it to the Oklahoma attorney reviewing possible CNA/Valley Forge liability. Dkt. # 56-10. CNA issued the claim handling guidelines that govern the claims handling process. Dkt. # 56-4, at 5. CNA has an office in Oklahoma City, Oklahoma. Dkt. # 56-11. CNA maintains an email address titled "oklahomabranchcommunications@cna.com." Dkt. # 56-12. The president and chief operating officer (COO) of CNA is the president and COO of Valley Forge and CCC. Dkt. # 56-18. Allegedly, the secretary of CNA is the secretary of Valley Forge and CCC. Dkt. # 56, at 4. CCC is the wholly owned subsidiary of CNAF. Dkt. # 45.

CNAF moves to dismiss the lawsuit as to it under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Dkt. # 42.

4

## II.

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205

F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id. "When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Plaintiffs argue that the Court has general and specific jurisdiction over CNAF, so the Court will analyze each in turn.

### A. General Personal Jurisdiction

General jurisdiction exists where a party's contacts with a state are so "'continuous and systematic' as to render [the party] essentially at home in the forum [s]tate." Goodyear Dunlop Tires

Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). Because general jurisdiction is unrelated to the events giving rise to the suit, "courts impose a . . . stringent minimum contacts test." OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (citations omitted). General jurisdiction existed where a defendant maintained an office and company files in the forum state, conducted numerous business activities in the state, distributed salary checks from in-state bank accounts, and engaged an in-state bank as a transfer agent. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952). On the other hand, general jurisdiction did not exist where the defendant sent an officer to the state for a negotiation, purchased equipment and training from an in-state business, sent personnel for training in the state, and accepted checks drawn from an in-state bank account. Helicopteros, 466 U.S. at 416.

Here, CNAF is not "at home" in Oklahoma, the forum state. CNAF was incorporated in Delaware and maintains its principal place of business in Illinois. Dkt. # 2, at 13-14; see also Dkt. # 56-15. In addition, plaintiffs cannot demonstrate that CNAF conducted any business activities in Oklahoma, including insurance underwriting. CNAF does not own property in Oklahoma, it does not maintain offices in Oklahoma, and does not do business as "CNA Commercial Insurance" in Oklahoma or elsewhere. CNAF is not a licensed insurer and does not undertake any activities associated with insurers. Plaintiffs argue that "general jurisdiction may be found if this Court has general jurisdiction over the subsidiaries of CNA, and CNA exerts sufficient control over them." Dkt. # 56, at 12. However, personal jurisdiction is a separate legal concept from an alter-ego theory, which plaintiffs seem to be arguing. See Stockton v. CNH Indus. Am., LLC, 2017 WL 11493759, at *4 (N.D. Okla. Jan. 18, 2017) (holding that Oklahoma's doctrine of corporate veil piercing "relates to a parent company's liability for the acts of its subsidiary, not to personal jurisdiction.") (emphasis

in original); see also Quarles v. Fuqua Industries, Inc., 504 F.2d 1358, 1362 (10th Cir. 1974) ("Thus a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."). Therefore, the Court finds that CNAF is not "at home" in Oklahoma and, thus, the Court does not have general personal jurisdiction over CNAF.

B. Specific Personal Jurisdiction

Specific jurisdiction involves a two-step analysis. First, courts "must consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting World-Wide Volkswagen, 444 U.S. at 297). To do so, courts "determine whether the defendant has sufficient minimum contacts with the forum." Zenergy, Inc. v. Coleman, 2009 WL 3571314, at *5 (N.D. Okla. Oct. 26, 2009) (citing OMI Holdings, 149 F.3d at 1091). If such minimum contacts exist, then courts must "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" Benton, 375 F.3d at 1075 (quoting OMI Holdings, 149 F.3d at 1091).

1. Minimum Contacts

For a court to exercise specific jurisdiction over a defendant, that defendant must have such minimum contacts with the forum state that it has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from 'actions by the defendant

himself that create a substantial connection with the forum state.'" OMI Holdings, 149 F.3d at 1091 (citing Burger King, 471 U.S. at 472; Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987)). Contacts exist "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum.'" Burger King, 471 U.S. at 475-76 (citations omitted).

Here, the only alleged fact in the third amended complaint specific to CNAF is that plaintiffs were insured under an unnamed policy issued by CNAF on March 9, 2016. However, CNAF's affidavit attached to its motion to dismiss demonstrates that CNAF does not issue insurance policies. Plaintiffs have not rebutted this with any affidavits of their own. They have showed only that "CNA" is associated with CCC and Valley Forge. And CNAF's affidavit shows that "CNA" is a service mark that it allows its subsidiaries to use, but it has nothing to do with CNAF. Even plaintiffs' own exhibit shows that CNA is merely a service mark. See Dkt. # 56-6, at 2. Allowing a subsidiary to use a service mark does not confer personal jurisdiction over the parent company. See Williams v. Canon, Inc., 432 F. Supp. 376, 380 (C.D. Cal. 1977) ("The use of a trademark by a corporation's subsidiary is not a transaction of business by the parent company."). Plaintiffs argue that "CNA" directed and orchestrated the claims handling process through its employees who were following its guidelines, which resulted in plaintiffs' injuries. Dkt. # 56, at 9. However, plaintiffs ignore the fact that "CNA" is merely a service mark, as demonstrated by CNAF's affidavit and plaintiffs' own exhibit, and "CNA" is not CNAF. The Court finds that plaintiffs have not satisfied their burden of showing that CNAF has sufficient minimum contacts to subject itself to the specific personal jurisdiction of this Court.

Having determined that CNAF has insufficient minimum contacts to subject it to specific personal jurisdiction in Oklahoma, the Court need not analyze whether exercising personal jurisdiction over CNAF would offend traditional notions of fair play and substantial justice. See OMI Holdings, Inc., 149 F.3d at 1091 ("Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.') (emphasis added) (citation omitted). The Court finds that CNAF's motion to dismiss for lack of personal jurisdiction should be granted.[2]

**IT IS THEREFORE ORDERED** that defendant CNA Financial Corporation's motion to dismiss for lack of personal jurisdiction (Dkt. # 42) is **granted**. CNA Financial Corporation is hereby **dismissed and terminated as a defendant**, and count three of the third amended petition (Dkt. # 12-17) is **dismissed without prejudice**.

**DATED** this 2nd day of July, 2020.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs ask in the alternative for discovery to determine whether CNAF does business as CNA. Dkt. # 56, at 15. The Court will not allow this discovery, because it would be a waste of the parties' resources based on the uncontroverted affidavit, Dkt. # 42-1.